## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
#### Newport News Division

**DEBORAH HUTH FLOYD,**

       **Plaintiff,**

v.                                                    **CIVIL ACTION NO. 4:13-cv-122**

**CAROLYN W. COLVIN,**
**Acting Commissioner,**
**Social Security Administration,**

       **Defendant.**

### REPORT AND RECOMMENDATION

*Pro se* Plaintiff Deborah Huth Floyd ("Ms. Floyd") filed a complaint pursuant to 42 U.S.C. § 405(g) that seeks judicial review of the final decision of the Defendant, the Acting Commissioner of the Social Security Administration ("Acting Commissioner"), which denied Ms. Floyd's claim for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act. Both parties have filed motions for summary judgment, ECF Nos. 13 and 17, which are now ready for a recommended resolution.[1] This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), Local Civil Rule 72, and the April 2,

---

[1] After the Court issued an order directing the parties to file motions for summary judgment, ECF No. 9, the Defendant filed a motion to dismiss for lack of prosecution on January 22, 2014 because the *pro se* Plaintiff failed to file a motion for summary judgment within the prescribed deadline, ECF No. 10. On February 6, 2014, the *pro se* Plaintiff filed a "Response to Defendant," ECF No. 13. By Order dated March 12, 2014, the District Judge liberally construed that filing as the Plaintiff's motion for summary judgment, denied the Defendant's motion to dismiss, and ordered the Defendant to file her own motion for summary judgment. ECF No. 15. On April 11, 2014, the Defendant, by counsel, filed her motion for summary judgment, ECF No. 17, with a memorandum in support, ECF No. 19, and the requisite *Roseboro* notice, ECF No. 19. The *pro se* Plaintiff then filed a "Plaintiff's Motion for Summary Judgement [sic] and in Opposition to Defendants [sic] Motion for Summary Judgement [sic]" on April 29, 2014. The Defendant did not file a responsive brief. Accordingly, the cross-motions for summary judgment are ripe for recommended adjudication.

2002 Standing Order on Assignment of Certain Matters to United States Magistrate Judges. After reviewing the briefs, the undersigned disposes of cross-motions for summary judgment on the papers without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J).   For the following reasons, the undersigned **RECOMMENDS** that Ms. Floyd's motion for summary judgment, ECF No. 13, be **DENIED**; the Defendant's motion for summary judgment, ECF No. 17, be **GRANTED**; the final decision of the Acting Commissioner be **AFFIRMED**, and that judgment be entered in favor of the Defendant.

## I. PROCEDURAL BACKGROUND

On March 30, 2011, Ms. Floyd initially filed her application for DIB, alleging a disability onset date of October 11, 2010, R. 130-33, due to rheumatoid arthritis, chronic lower back pain, and high blood pressure.  R. 162.  To qualify for DIB, Ms. Floyd must have insurance coverage at the time of disability onset.   42 U.S.C. § 423(a); 20 C.F.R. §§ 404.101(a); 404.131(a).  Ms. Floyd's date last insured ("DLI") is December 31, 2016.  R. 134.  Accordingly, Ms. Floyd has the burden of establishing the existence of a disability on or before that date.  Her application was initially denied on May 19, 2011, R. 83-87, and denied again upon reconsideration on December 9, 2011, R. 89-95.  Ms. Floyd requested a hearing in front of an administrative law judge ("ALJ") on February 3, 2012, R. 97-98, which was held on January 24, 2013, R. 34-61.  The ALJ issued the decision denying Ms. Floyd's DIB application on February 4, 2013.  R. 16-33.  Ms. Floyd petitioned the Appeals Council for the Office of Disability and Adjudication ("Appeals Council") for review of the ALJ's decision.  Ultimately, the Appeals Council denied Ms. Floyd's request for review of the ALJ's decision on July 11, 2013, R. 1-6, and the ALJ decision became the final decision of the Acting Commissioner.  After exhausting

2

her administrative remedies, Ms. Floyd filed her complaint for judicial review of the Acting Commissioner's final decision on September 12, 2013. ECF No. 3. Ms. Floyd was represented by counsel before the ALJ and the Appeals Counsel, but proceeds *pro se* in this action because she "cannot afford an attorney and the fees that go along with representation." ECF No. 20 at 2. The Acting Commissioner filed an Answer on November 25, 2013. ECF No. 6. Ms. Floyd filed what has been liberally construed as her motion for summary judgment on February 6, 2014, ECF No. 13, and the Acting Commissioner filed a cross-motion for summary judgment on April 11, 2014, ECF No. 17. Ms. Floyd filed a brief in opposition to the Defendant's motion for summary judgment on April 29, 2014, ECF No. 20. The time to file additional briefing has expired. Accordingly, the matter is ripe for recommended disposition.

## II. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the Commissioner's decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 401 U.S. 389, 401 (1971); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court must examine the record as a whole, but it may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of

the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (citing *Craig v. Chater*, 76 F.3d at 589 (4th Cir. 1996)).   The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. *Perales*, 402 U.S. at 390.   While the standard is high, where the ALJ's determination is not supported by substantial evidence on the record, or where the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).   Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

Lastly, "as a *pro se* litigant, [Ms. Floyd] is entitled to a liberal construction of her pleadings." *Miller v. Barnhart*, 64 F. App'x 858, 589 (4th Cir. 2003) (unpublished per curiam) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).   This principle is not without limitation, however.   As the Fourth Circuit has previously stated, while required to liberally construe *pro se* pleadings, district courts are not required "to conjure up questions never squarely presented to them.   District judges are not mind readers." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).   And while Ms. Floyd asks the Court to vacate the ALJ's decision by relying mainly on her own opinion, and the opinions of two medical sources, "this Court's scope of review is limited to determining whether the findings of the [Acting Commissioner, as reported through the ALJ's decision,] are supported by substantial evidence and whether the correct law was applied, not to substitute the Court's judgment for that of the [Acting Commissioner]." *Petonick v. Astrue*, No. 1:08-cv-15, 2009 WL 777400, at *20 (N.D. W. Va. Mar. 18, 2009).

### III. THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

Under the Social Security Administration regulations, a sequential five-step analysis evaluation of a disability claimant's work and medical history is required in order to determine if the claimant is eligible for benefits. 20 C.F.R. § 404.1520. The ALJ conducts this five-step analysis for the Acting Commissioner, and it is that analysis the district court must examine on judicial review to determine whether the correct legal standards were applied and whether the resulting decision is supported by substantial evidence in the record. In accordance with the five-step analysis, the ALJ made the following findings of fact and conclusions of law.

First, Ms. Floyd met the insured requirements of the Social Security Act through December 31, 2016, and she had not engaged in substantial gainful activity ("SGA") since October 11, 2010, the alleged onset date of disability.[2]  R. 21. Second, Ms. Floyd had the following severe impairments: rheumatoid arthritis, disorders of the back, obesity, osteoarthritis and allied disorders, which caused more than minimal limitation on her ability to perform basic work activities. *Id.* (citing 20 C.F.R. § 404.1520(c)). The ALJ found the other alleged impairments—vitamin D deficiency, hernia, diverticulitis, and kidney stones—were non-severe because they either did not exist continuously for a period of twelve months, were responsive to medication, did not require significant medical treatment, did not result in any continuous exertional or nonexertional limitations, or were non-medically determinable impairments. R 21-22.

Third, Ms. Floyd did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

---

[2] Since October 11, 2010, the ALJ found that Ms. Floyd had engaged in part-time work as a childcare provider at her church, but that this did not rise to the level of SGA. *Id.*

Appendix 1.  R. 22 (citing 20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526).  Specifically, the

ALJ found Ms. Floyd failed to make the requisite showing for "disorders of the spine," R. 22

(citing Listing 1.04(A)), and "inflammatory arthritis," *id.* (citing Listing 14.09).  The ALJ also

recognized that Ms. Floyd's obesity could exacerbate the severity of her other impairments, but

ultimately found that Ms. Floyd did not satisfy a listing even if her obesity was considered in

combination with her other impairments.[3]  R. 22 (citing R. 255).

Fourth, Ms. Floyd has the residual functional capacity ("RFC") to perform less than the

full range of light work, with the following limitations: she can lift, carry, push, and pull up to

ten pounds occasionally from the waist to chest (no overhead work activity), she can stand, walk,

and sit for six hours out of an eight hour work day, with an alternating sit-stand option every

fifteen to thirty minutes, no crawling, kneeling, or climbing of ladders, ropes, or scaffolds, but

she can perform other postural movements occasionally, with no constant reaching, grasping, or

---

[3] Ms. Floyd contests the ALJ's finding that described her as obese: "I find it highly offensive that
he would say I was obese." ECF No. 20, p. 5.  The ALJ's determination, however, was not a
pejorative description but rather a medical finding guided by the Social Security
Administration's Program Operations Manual System (POMS):

> The National Institutes of Health (NIH) established medical criteria for the
> diagnosis of obesity in its Clinical Guidelines on the Identification, Evaluation,
> and Treatment of Overweight and Obesity in Adults (NIH Publication No. 98-
> 4083, September 1998).  These guidelines classify overweight and obesity in
> adults according to Body Mass Index (BMI).  BMI is the ratio of an individual's
> weight in kilograms to the square of his or her height in meters (kg/m$^2$).  For
> adults, both men and women, the Clinical Guidelines describe a BMI of 25-29.9
> as "overweight" and a BMI of 30.0 or above as "obesity."

POMS, DI 24570.001 Evaluation of Obesity.  As the ALJ described, given Ms. Floyd's height
and weight, pursuant to the above formula her BMI was rated above 30.0, and thus she is
considered "obese" pursuant to NIH standards.  R. 22, 255.  The Commissioner is charged with
considering obesity in the sequential evaluation process, POMS, DI 24570.001 Evaluation of
Obesity, which the ALJ properly did.

handling, and no concentrated exposure to respiratory irritants, extreme temperatures, and humidity.  R. 23-26.  Next, the ALJ found that Ms. Floyd was capable of performing her past relevant work as a childcare provider and as a territory manager.  R. 26 (citing 20 C.F.R. § 404.1565).  Regardless, the ALJ also found that other jobs existed in significant numbers in the national economy that Ms. Floyd could perform, and thus, she was not under disability between the period of October 11, 2010 and February 4, 2013.  R. 26-28.

## IV. RELEVANT FACTUAL BACKGROUND

In her application, Ms. Floyd alleged a disability onset date of October 11, 2010.  R. 130. As of that date, Ms. Floyd was a 45 year-old female who graduated from high school and worked previously as a merchandiser, territorial manager, childcare provider, and cleaner/janitor.  At the ALJ hearing held on January 24, 2013, Ms. Floyd provided the following testimony:

Ms. Floyd lives in a single-story house with her two sons, who at the time were five and nine years old.  R. 40.  Ms. Floyd last worked in a janitorial capacity at the pre-school in her church, until October 11, 2010 (the alleged onset date of disability), when her employment was terminated.  R. 40-41.  Ms. Floyd was responsible for cleaning and stocking items, and spent about half of the time on her feet, with not much heavy lifting or carrying required.  R. 41.  Prior to that, Ms. Floyd worked as a merchandiser for a company who serviced and stocked the shelves of drugstores.  R. 42.  This job was primarily done while standing, with minimal lifting and carrying, as she checked and stocked the shelves.  *Id.*  She also worked as a territorial manager, which was based out of her home.  R. 42-43.  Ms. Floyd was responsible for managing a team of merchandisers to stock drugstores.  R. 43.

During the hearing, Ms. Floyd acknowledged that she currently was working part-time,

again in the pre-school at her church, but as a childcare provider. R. 50. She worked eight to ten hours per week, part-time, earning minimum wage. *Id.* Ms. Floyd testified that even if a full-time position was available, she would not be able to do the work, because she cannot lift, sit, or stand for an extended period of time without having to alternate positions. R. 51.

Before she stopped working in October of 2010, Ms. Floyd experienced back pain for approximately ten years prior. R. 45. The main pain symptoms are located in her lower back, which then radiates down her legs, and in her hands and joints due to rheumatoid arthritis ("RA"). *Id.* These pain symptoms continued to get progressively worse since she stopped working. *Id.* Ms. Floyd has received various injections to treat her pain, including "facet blockers" and epidural injections. R. 46. She also underwent "shock treatment" to her nerves on a few occasions. *Id.* Ms. Floyd takes the following medications as prescribed by her doctors to treat the pain: Percocet, Flexeril, and Celexa. R. 47. Those medications help "a tiny bit," but also cause drowsiness. *Id.* Ms. Floyd has also received various injections to treat her RA, including a Humira injection and a Rituxan injection/intravenous drip. R. 48. Ms. Floyd's RA primarily affects her hands, and her ability to grasp or manipulate, but she has also had issues in her ankles and shoulders. *Id.*

Ms. Floyd feels like the RA has been "flaring up" for the past ten years, and describes the pain as so intense that it never "lets up." R. 49. Ms. Floyd attributes the pain to an accident she had while playing racquetball years ago when she fell on her tailbone, and has been advised that there are no surgical remedies available. *Id.*

At home, Ms. Floyd can perform basic household chores and cooks for her two minor sons. R. 52-55. However, Ms. Floyd relies greatly on the help of her nine year old son. R. 52.

Her son will help with the laundry and vacuuming, and Ms. Floyd is able to dust and cook, but not to the extent that it requires standing for extended periods of time. R. 53. Ms. Floyd also drives and shops for groceries, although she has difficulty carrying items at times. *Id.* Ms. Floyd testified that she could walk fifteen to twenty minutes before the pain becomes a problem, and that she could stand or sit for fifteen minutes before she would have to switch positions or lay down. R. 54-55. Lying down typically helps alleviate her pain symptoms, but Ms. Floyd still has difficulty sleeping. *Id.* Ms. Floyd can lift or carry five to eight pounds. R. 55.

In reaching his decision, the ALJ found that Ms. Floyd's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Ms. Floyd's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the objective medical evidence and the ALJ's RFC assessment. R. 24. Specifically, the ALJ relied on, and summarized, medical reports and evidence dating back to 2010, but determined, in accord with the opinion of Ms. Floyd's rheumatologist, that the "objective findings have always been less than her physical [subjective] complaints." *Id.* (citing R. 553).

In November of 2012, Ms. Floyd was treated by pain management specialist Dr. Mark Newman for shooting and throbbing pain in her lower back, legs, and neck. R. 24 (citing R. 576). During the visit, Ms. Floyd reported that an injection from a month prior, in September of 2012, had helped ease the pain 50%. *Id.* Dr. Newman found "no acute distress," with no involuntary movements, mild spasm in the thoracic spine, no trigger points, appropriate muscle strength, with hip rotation non-painful and a mildly antalgic gait. *Id.* (citing R. 577).

In September of 2012, Dr. Newman's progress notes document that use of a heating pad,

hot showers, Lidoderm patches, pain medication, and reduced activity help alleviate Ms. Floyd's pain symptoms. R. 24-25 (citing R. 580). Again, Dr. Newman found antalgic gait with normal strength, intact sensation, and mild to moderate tenderness and muscle spasm. *Id.* Dr. Newman recommended use of "NSAIDs" (non-steroidal anti-inflammatory drug) and a heating pad/hot showers for pain relief. *Id.* Notably, in February of 2012, Ms. Floyd's rheumatologist Dr. Roger Lidman documented that "when [she is distracted] I can take her through a normal range of motion [test]," even though Ms. Floyd reported experiencing "pain everywhere." R. 25 (citing R. 549).

Similarly, the ALJ found that the medical evidence from 2011 failed to establish that Ms. Floyd has become unproductive in her daily routine. R. 25. In December of 2011, Dr. John Mincks found Ms. Floyd was not in acute distress, her pulses were intact, and she had a good range of motion, with no knee effusions, no cyanosis, clubbing, or edema to her extremities. R. 25 (citing R. 485-86). In August and September of 2011, records from the Center for Arthritis and Rheumatic Diseases, P.C., where she was receiving infusions and injections, show that Ms. Floyd's subjective complaints were disproportionate to the objective medical findings. R. 25 (citing R. 391). The only significant findings related to Ms. Floyd's hands, which resulted in suggested limitations for lifting, pushing, pulling or fine manipulation, even though she complained of pain all over. R. 25 (citing R. 389-91). The ALJ concluded that records from earlier in 2011 are consistent with the records discussed above.

For instance, during an examination in July of 2011, Ms. Floyd denied arthritis, joint pain, and stiffness. R. 25 (citing R. 490) ("Denies arthritis, joint pain, stiffness."). But just a few months earlier in April of 2011, Ms. Floyd reported more pain and swelling in the joints of her

hands and increasing stiffness. R. 25 (citing R. 356). Dr. Lidman subsequently found tenderness in several of Ms. Floyd's joints, no synovitis in the wrist, elbow, knee, or ankle, with full, painless motion in the hip and shoulder. *Id.* As a result, Dr. Lidman wanted to increase Ms. Floyd's infusion dose, and scheduled a follow-up appointment. *Id.*

The ALJ concluded that the medical evidence from 2010 was also unremarkable. In November of 2010, Ms. Floyd told Dr. Newman that she felt a 50% improvement in the lower back and leg pain following her epidural injections. R. 25 (citing R. 233). Dr. Newman found that Ms. Floyd's pain was reduced when she changed postural positions, and a combination of medication and injections improved her overall function. *Id.* Similarly, during a physical examination with Dr. Lidman, the only remarkable findings were in Ms. Floyd's right hand, for which Dr. Lidman recommended continued medication and an ultrasound/x-ray. R. 25 (citing R. 520). The ALJ summarized the medical record evidence, and his conclusions regarding Ms. Floyd's credibility, as follows:

> [Ms. Floyd] is able to perform activities of daily living very well. For instance, [Ms. Floyd] stated that she feeds, dresses, and completes the everyday needs required by her two young sons ages four and seven. She also prepares daily meals for her children, launders her clothing, and washes dishes. Furthermore, [Ms. Floyd] drives in a car, rides in a car, and shops "a couple times a month for an hour or so." She also reported that she works part time despite pain.
>
> Although [Ms. Floyd's] treating rheumatologist, Dr. Roger W. Lidman, supports a finding of disability, he did not find that the objective medical evidence of record is consistent with [Ms. Floyd's] subjective complaints.
>
> The record provides that Ms. Floyd is diagnosed with rheumatoid arthritis, together with disorders of the back and osteoarthritis. She alleges that she suffers from low back and leg pain, as a result. She also testified that she experiences pain in all of her joint. While Dr. Roger W. Lidman, a treating physician, states that Ms. Floyd has shown poor response to standard therapy, he also indicates that her objective findings have always been less than her physical complaints.

11

R. 24 (internal citations omitted).

To arrive at an RFC of less than the full range of light work with the above-mentioned limitations, the ALJ credited the following opinion evidence: First, the ALJ gave little weight to the June 2012 opinion of Dr. Lidman, which provided that Ms. Floyd is able to sit/stand/walk for no more than one hour and cannot stoop. R. 26 (citing R. 565-73). The ALJ assigned little weight to this opinion because it appeared to be based primarily on Ms. Floyd's subjective complaints, and the ALJ noted that Dr. Lidman explicitly acknowledged that "[t]he patient's objective findings by physical examination have always been less than her subjective complaints." *Id.* (citing R. 553).

Second, in February of 2012, Dr. Lidman opined that Ms. Floyd is "unable to perform the necessary tasks of her employment and I consider her disabled." R. 26 (citing R. 548). "The Administrative Law Judge gives this opinion great weight with respect to past relevant work as a merchandizer and cleaner. On the other hand, not all past relevant work or other work within [Ms. Floyd's] residual functional capacity is excluded." R. 26. Thus, the ALJ agreed that Ms. Floyd could no longer perform *some* of her past relevant work; specifically, as a cleaner and merchandizer, but the ALJ disagreed that *all* past relevant work was precluded.

Third, the ALJ gave little weight to Dr. Lidman's August 2011 opinion, in which he stated that Ms. Floyd may be unable to perform work activities and is unable to use her hands for lifting, pushing, pulling, or fine manipulation. R. 26 (citing R. 390). The ALJ discounted this opinion because the limitation discussed by Dr. Lidman did not last for a period of 12 or more continuous months. R. 26. Lastly, the ALJ assigned significant weight to the opinion of state agency non-treating consultant Dr. Ralph Hellams, who, after reviewing all of the medical

12

evidence in the record, opined that while Ms. Floyd did have some limitations, those limitations did not preclude all work activity, and specifically, that Ms. Floyd is capable of performing past relevant work as a territory manager. R. 26 (citing R. 80).

The ALJ concluded that based on all of the evidence in the record, and given the RFC, Ms. Floyd was capable of performing past relevant work as a childcare provider and as a territory manager. R. 26 (citing 20 C.F.R. § 404.1565), which are characterized as semi-skilled, light work, and skilled, sedentary work, respectively. Regardless, after considering the testimony from an impartial vocational expert ("VE"), the ALJ also concluded that there were other additional jobs that existed in significant numbers in the national economy that Ms. Floyd could perform, including a ticket seller (unskilled, light work) and a charge account clerk (unskilled, sedentary work), which would both allow for a sit-stand option. R. 26-27. Therefore, the ALJ determined that Ms. Floyd had not been under disability any time since October 11, 2010. R. 28.

After liberally construing Ms. Floyd's complaint, her motion for summary judgment, and her opposition to the Defendant's motion for summary judgment, on judicial review Ms. Floyd challenges the final decision of the Acting Commissioner by arguing: (1) the ALJ failed to properly consider and accept the February 2012 opinion of Ms. Floyd's treating rheumatologist, Dr. Roger Lidman, that Ms. Floyd was unable to perform the necessary tasks of employment and that he considers her disabled, ECF No. 3 at 1, No. 13 at 1, ¶ 4, No. 20 at 3, 6; (2) the ALJ failed to properly consider and accept the January 2013 opinion of Ms. Floyd's treating pain management specialist Dr. Newman, that further improvement in Ms. Floyd's lower back pain was not anticipated, ECF No. 3 at 2, No. 13 at 2, ¶ 5, No. 20 at 2-3, 5, 7; and (3) the ALJ failed

13

to properly consider and accept Ms. Floyd's subjective complaints and testimony about her symptoms, *see generally* ECF Nos. 3, 13, 20.

While the undersigned does not doubt that Ms. Floyd has "worked all of [her] life and didn't ask to be stricken by any of these health problems," to determine eligibility for benefits, the Court determines whether the Social Security Administration followed their own regulations and procedures, and whether the final decision is supported by substantial evidence in the record. The Court also reviews only the decision of the ALJ, which determined that Ms. Floyd was not disabled between October 11, 2010 and February 4, 2013. R. 32-33. The Court reviews the record to determine whether there is substantial evidence to support the ALJ's decision for this time period, even though significant time has since passed. *See* ECF No. 20 at 6 ("Please keep in mind that the ALJ decision was a few years ago and I was struggling then and it has only gotten worst [sic]. I believe in my doctors and believe they have put forth substantial evidence."). Because there is substantial evidence in the record to support the final decision of the Acting Commissioner, and because the ALJ properly applied the law in Ms. Floyd's case, the undersigned would grant the Defendant's motion for summary judgment, and affirm the final decision of the Acting Commissioner.

## V. ANALYSIS

### A. The ALJ properly gave little weight to treating physician Dr. Lidman's February 2012 opinion because it was inconsistent with the totality of the objective medical evidence in the record and Dr. Lidman opined on an issue reserved for the Commissioner.

First, Ms. Floyd argues that the ALJ should have assigned greater weight to the treating rheumatologist Dr. Lidman's February 2012 opinion where he stated that Ms. Floyd was "unable to perform the necessary tasks of her employment and [he] consider[s] her disabled." R. 548.

14

Generally, the Acting Commissioner's disability determination is based on the totality of the evidence in the record, including the "objective medical evidence," and any "other evidence from medical sources, such as medical history, opinions, and statements about treatment . . . ." 20 C.F.R. § 404.1512(b).  If the medical evidence, including all medical examinations by all physicians, is consistent, then the ALJ makes a determination based on all of the evidence.  20 C.F.R. § 404.1520b(a).  However, if any of the evidence is inconsistent, the ALJ must decide which evidence should receive controlling weight.  20 C.F.R §§ 404.1520b(b); 404.1527.  Under the "treating physician rule," a treating physician's opinion must be given controlling weight if: (1) it is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) it is not inconsistent with other substantial evidence in the record.  *See Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(d)(2); Social Security Ruling ("SSR") 96-2p.

If the treating source's opinion is not well-supported by medically acceptable techniques, or is inconsistent with the other substantial evidence, the treating physician's opinion will not be given controlling weight.  *Baxter v. Astrue*, No. 3:11-CV-679, 2013 WL 499338, at *4 (E.D. Va. Feb. 7, 2013) (citation omitted).  The treating physician's opinion will also not be given controlling weight if the physician opines on an issue reserved for the Commissioner, such as whether the claimant is disabled for employment purposes.  *See Jarrells v. Barnhart*, No. 7:04–CV–411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005); *accord* 20 C.F.R. §§ 404.1527(d)(3), (e).  If the opinion is deemed not controlling, then the ALJ determines the weight of the opinion by considering the factors in 20 C.F.R. § 404.1527: the length, nature, and extent of the treatment relationship; frequency of examinations; supportability by relevant evidence; consistency with the record as a whole; the physician's degree of specialization; and

any other factors tending to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c)(2)-(6); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006). Additionally, to determine the claimant's RFC, the ALJ can rely on, and give weight to, the opinions of the state agency consultants, when such an opinion is consistent with the record. *See* 20 C.F.R. § 404.1527(e); *see also Smith v. Schweiker*, 795 F.2d 343, 345-46 (4th Cir. 1986); SSR 96-6p. The opinion and report of a non-treating, non-examining state agency consultant is not substantial evidence when it is "contradicted by all other evidence in the record." *Millner v. Schweiker*, 725 F.2d 243, 245 (4th Cir. 1984).

First, here, even though Dr. Lidman was a treating physician of Ms. Floyd, the ALJ properly afforded little weight to his February 2012 opinion because it was inconsistent with all of the other objective medical evidence in the record, and inconsistent with prior statements Dr. Lidman himself had made about Ms. Floyd's symptoms. The objective medical evidence in the record shows that Ms. Floyd suffers primarily from rheumatoid arthritis and back pain. In short, the records do not illustrate the level of debilitation that Ms. Floyd described in her testimony, in her complaint on judicial review, and in her subsequent pleadings. *See* ECF No. 3 at 2 ("I just can't believe I have been denied disability since I worked all those years and put into Social Security and now have major health issues and get nothing."); *see also* ECF No. 20 at 2 ("What I am hearing or understanding from the defendant is that these records are only opinions of the doctors. I don't understand how these medical records I have are just opinions.").[4] Ms. Floyd's

---

[4] In her opposition brief to the Defendant's motion for summary judgment, Ms. Floyd also refers to, and attaches, a two-page summary from a visit with Dr. Lidman on April 24, 2014. ECF No. 20 at 3, attach. 1. This medical record evidence was not before the ALJ or the Appeals Council, and thus is not considered by this Court. *Wilkins v. Secretary, Dep't of Health and Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (quoting *Huckabee v. Richardson*, 468 F.2d 1380, 1381 (4th Cir. 1972); 42 U.S.C. § 405(g)) ("Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the Secretary's decision is supported by substantial evidence.").

rheumatoid arthritis and back pain have been treated with medication, infusions/injections, and heat treatment, and the medical records show no other abnormalities that would result in significant functional limitations. *See id.* at 3 ("I have tried self-injections, IV infusions and pills with no success.").

Significantly, Dr. Lidman's opinion was not consistent with the objective medical records documenting his own physical examinations of Ms. Floyd. Even when Ms. Floyd complained of pain all over, Dr. Lidman's examinations revealed minor findings: swelling of Ms. Floyd's hands and around her joints, R. 247, 249-51, 255, 355, 383, 411-13, 434, no evidence of synovitis (inflammation) around her wrist, elbow, knee, or ankle, *id.*, full range of motion in her spine and almost full range of motion in her hips, R. 249, 255, 434, and decreased pain after receiving steroid injections, R. 249-50, 252, 356. The treatments were consistent and conservative: pain medication, infusions/injections, and heat treatment therapy. This objective medical evidence is inconsistent with Dr. Lidman's opinion that Ms. Floyd is disabled and unable to work. Rather, Dr. Lidman's opinion is likely based on the subjective complaints of Ms. Floyd, which Dr. Lipman himself previously recognized were always out of proportion to any objective findings. R. 553 ("The patient's objective findings by physical examination have always been less than her subjective complaints; however, she has persistently elevated phase reactants, an abnormal bone scan, and an abnormal musculoskeletal ultrasound. *By her account*, she is unable to sit for periods longer than 10 to 15 minutes, or stand for periods longer than 10 to 15 minutes. With the involvement of her hands, shoulders, knees, and ankles, lifting, pushing, and pulling are inhibited, as outlined in the physical capacities form that accompanies this letter."). Dr. Lidman's objective reports even documents his ability to distract Ms. Floyd, which

17

then produces normal results in the physical examination. R. 549 ("When distracted I can take her through a normal range of motion.").

Moreover, Dr. Lidman's opinion[5] that Ms. Floyd is disabled and unable to work is inconsistent with Ms. Floyd's own testimony during the ALJ hearing. Ms. Floyd testified to caring for her two children, performing household chores, driving, grocery shopping, and working part-time as a childcare provider at the church. Because Dr. Lidman's opinion was inconsistent with other substantial evidence in the record, the ALJ properly assigned the opinion little weight. *See Craig v. Chater*, 76 F.3d 586, 590 (4th Cir. 1996); 20 C.F.R. § 404.1527(d)(2); Social Security Ruling ("SSR") 96-2p. Accordingly, the undersigned would find that the ALJ's decision was supported by substantial evidence on this basis.

Second, even though Dr. Lidman stated an opinion that Ms. Floyd is disabled, that determination is reserved for the Acting Commissioner. Accordingly, a "statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled."). On this basis alone, the ALJ's decision to not assign Dr. Lidman's opinion controlling weight was proper and supported by substantial evidence, because the treating physician opined on an issue reserved for the Commissioner. The ALJ determines the weight of

---

[5] Ms. Floyd also seems to conflate a medical opinion with objective medical record evidence. *See* ECF No. 20 at 2 ("What I am hearing or understanding from the defendant is that these records are only opinions of the doctors. I don't understand how these medical records I have are just opinion."). Tasked with reviewing the totality of the administrative record including medical records, the ALJ also considers any opinions, including opinions from treating physicians like Dr. Lidman. However, the regulations do not require than an ALJ accept opinions from a treating physician in every situation, like here, where the treating physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Acting Commissioner), or when the physician's opinion is inconsistent with other evidence. *See* 20 C.F.R. §§ 404.1527(d)(3), (d)(4), (e).

18

the opinion by considering the factors in 20 C.F.R. § 404.1527, and the decision to assign little

weight to Dr. Lidman's opinion is supported by substantial evidence in the record.

**B. Dr. Newman's January 18, 2013 letter was submitted on appeal to the Appeals Council and the Appeals Council explicitly considered the letter when denying Ms. Floyd's request for review.**

Next, Ms. Floyd argues that the additional evidence in the form of Dr. Newman's January

18, 2013 opinion letter submitted to the Appeals Council should have been accepted and been

cause for reversal of the ALJ's decision denying her claim for benefits. *See* ECF No. 3 at 2 ("I

also have a letter dated January 18, 2013 from my Pain Management Doctor, Mark W. Newman,

who I see for chronic low back pain relief . . . . At the end of the letter he states that he does not

anticipate[] any improvement in my overall low back pain."); ECF No. 20 at 5, 7.  In the letter,

Dr. Newman concludes that he does "not anticipate any improvement in [Ms. Floyd's] overall

low back pain. [He] will continue to try and maintain her current status and function ability.

This will be accomplished by medication and injections." R. 590-91.  In denying Ms. Floyd's

request for review, the Appeals Council considered the letter from Dr. Newman, in addition to

other newly submitted evidence. R. 1-6.  Because the Appeals Council did in fact consider the

letter, R. 5, there was no legal error committed, and accordingly, this is also not a basis for

remand.

"The Appeals Council must consider evidence submitted with the request for review in

deciding whether to grant review 'if the additional evidence is (a) new, (b) material, and (c)

relates to the period on or before the date of the ALJ's decision.'" *Wilkins v. Secretary, Dep't of

Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991) (citing *Williams v. Sullivan*, 905

F.2d 214, 216 (8th Cir. 1990)) (noting there is no requirement that a claimant show good cause

when seeking to present new evidence before the Appeals Council). Evidence is new if it is not duplicative or cumulative. *Wilkins*, 953 F.2d at 96 (citations omitted). "Evidence is material if there is a reasonable probability that the new evidence would have changed the outcome." *Id.* (citing *Borders v. Heckler*, 777 F.2d 954, 956 (4th Cir. 1985)). Here, the Appeals Council explicitly stated that it considered Dr. Newman's letter, but it found no basis to review the ALJ's decision, and therefore denied Ms. Floyd's request for review. R. 1 ("In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council."); *see also* R. 5 ("The Appeals Council has received additional evidence which it is making part of the record. That evidence consists of the following exhibits: . . . Exhibit 25F (4 pages) Medical Report from Mark W. Newman, DO, dated January 18, 2013."). Ms. Floyd confuses the legal standard that the agency is bound by in this scenario: at most, all the Appeals Council was required to do was *consider* the letter from Dr. Newman, but it was not required *accept* its findings or assertions as a basis for reversal of the ALJ decision. Accordingly, there was no legal error committed.

Regardless, even if the letter had not been considered by the Appeals Council, it was largely cumulative of other medical evidence and opinion evidence in the record. The letter describes Dr. Newman's treatment of Ms. Floyd, her past reported symptoms, and his conclusion that he did not anticipate any improvement, all of which was already discussed by the ALJ in his decision through his analysis of the other objective medical evidence and opinion evidence. R. 24-26. Accordingly, even though there is no basis to object because the Appeal Council explicitly considered the letter, the letter was largely cumulative of other evidence in the record, and likely would not have changed the outcome of the final decision, and thus it constituted

20

neither "new" nor "material" evidence. *Wilkins,* 953 F.2d at 95-96. Therefore, the Court finds

that the Appeal Council considered the letter from Dr. Newman, but ultimately rejected his

opinions in denying Ms. Floyd's request for review, and there is no legal basis upon which to

reverse the final decision of the Acting Commissioner.

### C. The ALJ's credibility assessment of Ms. Floyd was also proper.

To the extent Ms. Floyd argues that the ALJ improperly found that her statements

regarding the intensity, persistence, and limiting effects of her symptoms were not credible, this

argument also fails.    When determining Ms. Floyd's RFC, the ALJ considered (1) the

impairments as supported by the objective medical evidence and (2) the impairments based on

Ms. Floyd's subjective complaints. *Craig v. Chater,* 76 F.3d 586, 594 (4th Cir. 1996).  When

considering Ms. Floyd's subjective complaints and allegations of functional limitations, the ALJ

must make a credibility assessment of the intensity of the symptoms to determine the true degree

of limitation. *Id.*; *see also* 20 C.F.R. § 404.1529(a); SSR 96-7p. Under the *Craig* test, the ALJ

must first determine whether there is an underlying medically-determinable physical or mental

impairment that reasonably could produce the pain or symptoms. *Id.* If so, then the second step

requires the ALJ to evaluate the claimant's statements about the intensity and persistence of the

pain and the extent to which it affects or limits the ability to work. *Id.* Throughout the analysis,

the ALJ must sufficiently explain the conclusions, including the weight assigned to the relevant

evidence, so that a reviewing court can evaluate the basis for the final decision. *Ivey v. Barnhart,*

383 F. Supp. 2d 387, 389-90 (E.D.N.C. 2005) (citing *Arnold v. Secretary,* 567 F.2d 258, 259 (4th

Cir. 1977)).  However, "[b]ecause he had the opportunity to observe the demeanor and to

determine the credibility of the claimant, the ALJ's observations concerning these questions are

to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)).

After considering the totality of the evidence in the record, the ALJ determined that Ms. Floyd's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Ms. Floyd's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent that they were inconsistent with the RFC finding. R. 24. In the RFC finding, the ALJ limited Ms. Floyd to less than the full range of light work, with limitations to account for impairments with regard to lifting, carrying, pushing, pulling, standing, walking, and sitting. R. 23. Specifically, the ALJ included in the RFC lifting/carrying/pushing/pulling limits of up to ten pounds from only Ms. Floyd's waist to chest, standing/walking/sitting for six hours in an eight hour day with a sit-stand option every 15 to 30 minutes, avoid crawling, kneeling, climbing, ladders, ropes, and scaffolds, and avoid constant reaching, grasping, handling, or fine motor manipulation. *Id.* In finding Ms. Floyd's testimony only partially credible, the ALJ relied on the objective medical records and the opinion of the state agency consultant, Dr. Ralph Hellams, which were not consistent with Ms. Floyd's statements, to the extent that she alleged complete debilitation or inability to perform any postural movements for any significant length of time. He also relied on those parts of Ms. Floyd's testimony regarding her activities of daily living and work history which contradicted her claims of debilitation. This finding is supported by substantial evidence in the record.

The objective medical records show that Ms. Floyd had mild to moderate degenerative changes in her back and joints, R. 233, 557, and mild to moderate tenderness with an antalgic gait, but otherwise, Ms. Floyd's physical examinations yielded normal results, with normal

muscle strength, intact reflexes, rotation and sensation. R. 232-38, 251, 556, 558-59, 576-78, 580. These mild limitations in her back and hands were treated by medication, injections, and heat treatment, which helped to control the pain. R. 232-38, 351, 558-59, 576-78, 580. Ms. Floyd even testified that the pain medications helped "a tiny bit." R. 47. Ms. Floyd's rheumatologist, Dr. Lidman, stated that Ms. Floyd's subjective complaints were always inconsistent, and more exaggerated, than his objective findings after physical examination. R. 553. Moreover, according to Ms. Floyd's own testimony, she continued to work for ten years after the pain symptoms began. R. 45. At the time of the ALJ hearing, she was continuing to work, albeit part time. R. 50-51. Ms. Floyd was also able to care for her two minor sons, keep up with work around the house, including cooking, cleaning, and laundry, and drove to the grocery store a couple times per month. R 52-53. Such activity is not consistent with a finding of complete disability.

The ALJ properly acknowledged Ms. Floyd's severe impairments to due to her back pain and rheumatoid arthritis, but such impairments do not preclude Ms. Floyd from engaging in any gainful activity, especially with the limitations as described by the ALJ in the RFC finding, which adequately account for Ms. Floyd's impairments. Moreover, "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989-90 (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)). In discounting portions of Ms. Floyd's testimony about her subjective complaints, the ALJ properly relied on the objective medical evidence in the record in applying the correct agency regulations to determine Ms. Floyd had the RFC to complete less than the full range of light work, which

23

included past relevant work as a territory manager and child care provider, and accounted for any specific limitations she might have due to her impairments.   The Court would find that substantial evidence in the record supports the ALJ's credibility determination.   Therefore, the Court would affirm the Acting Commissioner's final decision on this basis as well.

## VI. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Ms. Floyd's motion for summary judgment, ECF No. 13, be **DENIED**; the Defendant's motion for summary judgment, ECF No. 17, be **GRANTED**; the final decision of the Acting Commissioner be **AFFIRMED**, and that judgment be entered in favor of the Defendant.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1.  Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d).   A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2.  A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a

judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the *pro se* Plaintiff and counsel of record for the Respondent.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
May 15, 2014

25

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Ms. Deborah Huth Floyd
4 Fort Worth Street
Hampton, Virginia 23669
*Pro Se* Plaintiff

Mr. Mark A. Exley
United States Attorney's Office
World Trade Center
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Counsel for the Defendant

Fernando Galindo,
Clerk of Court

By: _____

Deputy Clerk
May 15, 2014